Steven L. Olsen ISBN 3586
HUNTLEY PARK, LLP
250 S. 5th, Suite 660
P.O. Box 2188
Boise, Idaho 83701-2188
Telephone: 208-345-7800
Facsimile: 208-345-7894

Attorneys for Plaintiffs

ORIGINAL

U S DISTRICT &
BANKRUPTCY COURTS
04 JAN 13 PM 6:18
FILED DEPOSITORY IDAHO
Cameron S. Burke, Clerk

FEE PAID
R# 15697

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RON B. POLLARD and CHARLOTTE K. POLLARD; CP ENTERPRISES INTERNATIONAL, INC.; DON STEPHENS and DEYON STEPHENS, husband and wife, individually and d/b/a/ CIMARRON ASSOCIATES; RANDY DORMAIER, an individual; GREG GREEN and DEBBIE GREEN, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>MELALEUCA, INC., MELALEUCA OF CANADA, INC.; MELALEUCA INTERNATIONAL, INC.; OIL OF MELALEUCA, INC.; MELALEUCA OF KOREA HOLDING COMPANY; MELALEUCA SOUTHEAST ASIA, INC., and MELALEUCA OF ASIA, LTD. CO.<br><br>Defendants. | Case No. CIV 04 - 019 - E - LMB<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW, the Plaintiffs, by and through their counsel of record, Huntley Park, LLP, and complain against the Defendants as follows:



1.

## I. PARTIES, JURISDICTION AND VENUE

1. At all times relevant herein, Plaintiffs Ron Pollard and Charlotte K. Pollard ("the Pollards") were residents of the State of Colorado. CP Enterprises International, Inc. ("CP Enterprises"), is, and at all times relevant hereto, was a Colorado corporation in good standing.

2. At all times relevant herein, Plaintiffs Don Stephens and Deyon Stephens, individually and d/b/a Cimarron Associates, were residents of the State of Texas.

3. At all times relevant herein, Plaintiff Randy Dormaier was a resident of the State of Washington.

4. At all times relevant herein, Plaintiffs Greg Green and Debbie Green were residents of the State of Colorado.

5. At all times relevant herein the Defendants (hereinafter collectively referred to as "Melaleuca") were Idaho corporations, with their principal place of business in Idaho Falls, Bonneville County, Idaho.

6. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and attorneys' fees. This Court has diversity jurisdiction pursuant to Tile 28, Section 1332, U.S.C.

7. This action arose in Bonneville County and venue is proper in the Eastern Division of the United States District Court for the District of Idaho pursuant to D.Id.L.Div.R.3.1.

## FACTUAL ALLEGATIONS

8. Between 1989 and 1990, Plaintiffs were solicited by agents of the Defendants not only to purchase Melaleuca products, but also to become Independent Marketing Executives, a designation used by the Defendants for agents selling its product.

9. Based on numerous written and oral representations made by Defendant's agents, upon which Plaintiffs justifiably relied, the Plaintiffs entered into a distributor agreement with the Defendants which was supplied to Plaintiffs by the Defendants and which was designated as the Melaleuca Marketing Executive Agreement.

10. Pursuant to the Agreement, as well as related documents and verbal representations made by the Defendants and their agents, Plaintiffs were to be paid commissions and bonuses based on the sale of Melaleuca products by individuals or entities within a Melaleuca marketing organization to be developed by the Plaintiffs.

11. The central or primary form of compensation to be paid to the Plaintiff was what the Defendants nominated as the 7 percent organizational commission, which involved the payment of a 7 percent commission based on the proceeds from revenue derived from monthly sales of Melaleuca products generated by the Plaintiffs' marketing organization.

12. In the written documentation supplied to and verbal statements made to the Plaintiffs by Defendants and their agents, the Defendants, among other things, represented to the Plaintiffs the following:

a. The organizational commission was a way of building residual income and could mean added security for retirement.

b. This was an opportunity for workers to create their own retirement fund – security they know will be there when they need it.

c. This was a unique program which offers income security based on continuing monthly sales generated after a one-time product presentation.

d. This was an opportunity to retire more comfortably.

e. This arrangement rewards loyal employees with wholesale prices and lasting residual commissions.

f. The organizational commission involved a secure income for today and tomorrow for those who don't have a retirement plan or are concerned about their current retirement program.

g. With the Melaleuca business you have the potential to build a business with residual income that lasts a lifetime.

h. A Melaleuca independent business has the potential to provide residual income that can mean added security for retirement, a residual income is a hedge against economic down turns before and after you retire.

i. Melaleuca is loyal to the 7 percent organizational bonus, the bonus is consistent and secure, the method for determining the 7 percent organizational bonus will not be changed and continues to be the foundation of our compensation plan.

j. A Melaleuca business can be passed on from a marketing executive to his children at the time of his death.

13. After the execution of the written Agreement between the Plaintiffs and the Defendants, the Plaintiffs through exhaustive work and effort developed a large marketing organization which yielded millions of dollars to Defendants. Plaintiffs thereby earned the right to and were paid substantial, continuing monthly commissions and bonuses by the Defendants, central of which was the 7 percent organizational bonus.

14. Despite Melaleuca's assurances that the 7 percent organizational bonus was inviolate and would never be changed, the Defendants in January of 1999, unilaterally and without agreement

of the Plaintiffs or the payment of any additional consideration, withheld from the Plaintiffs 50 percent of their ongoing commissions.

15. At that time, the Defendants informed the Plaintiffs that in order to receive all or any portion of the withheld commissions, the Plaintiffs would have to perform new, additional services for the Defendants, which were never expressly or implicitly agreed to by Plaintiffs.

16. Subsequent to January 1999, and without any consideration or agreement of the Plaintiffs, Defendants withheld additional commissions and informed Plaintiffs that they would have to perform new and additional services for the Defendants in order to obtain the 7 percent organizational bonus.

17. In March of 1999, the Defendants further informed the Plaintiffs the Pollards and CP Enterprises that the Defendants were going to withhold all of their earned organizational commissions, terminate their distributor agreement and discontinue said Plaintiffs' right to any further commissions based on information received by the Defendants that said Plaintiffs allegedly violated certain policies of the Defendants.

## II. FIRST CLAIM FOR RELIEF
**(Breach of Agreement - Lack of Consideration)**

18. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

19. Until the Defendants commenced to withhold 50 percent of the earned organizational commissions of the Plaintiffs, the Defendants had always represented that as long as Defendants' products were sold through Plaintiffs' marketing organization, the 7% organizational commissions would always be paid to Plaintiffs.

20. Substantial sales of Defendants' products have continued to be marketed or sold

through Plaintiffs' marketing organizations.

21. The unilateral withholding by the Defendants of 50 percent of Plaintiffs' earned organizational commissions and thereafter requiring Plaintiffs to perform new, additional services for the Defendants in order to earn previously earned commission and to be paid the 7 percent organizational commission is wrongful and constitutes a breach of agreement by the Defendants. Further, the new agreement Defendants attempted to implement lacked consideration and is therefore unenforceable.

22. The breach of agreement by the Defendants has resulted in damages exceeding $1,000,000 to the Plaintiffs in the loss of their earned residual commissions, benefits and other losses and consequential damages. Plaintiffs are further entitled to prejudgment interest on the losses caused by Melaleuca.

## II. SECOND CLAIM FOR RELIEF
**(Unjust Enrichment)**

23. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

24. Plaintiffs' significant effort and labor over the course of time resulted in the development of a large marketing organization which generated the sale of millions of dollars of Defendants' product.

25. The Defendants' unilateral withholding of all earned commissions from the Plaintiffs from the substantial sales of Defendants' products through Plaintiffs' marketing organization and Defendants' failure to pay Plaintiffs their 7 percent organizational bonus as agreed, not only constitutes a breach of agreement by the Defendants, but also involves the unjust enrichment of the Defendants at the expense of the Plaintiffs.

26. Such unjust enrichment by the Defendants at the Plaintiffs' expense have resulted in significant damages to the Plaintiffs as set forth herein.

## III. THIRD CLAIM FOR RELIEF (Conversion)

27. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

28. After withholding Plaintiffs' earned residual commissions and failing to pay Plaintiffs the 7 percent organizational bonus as previously agreed, the Defendants converted the organization and business developed by Plaintiffs, giving to itself or other individuals within the Melaleuca system the profits resulting from Plaintiffs' individual effort and expense.

29. The acts of Melaleuca described above constitute a conversion of Plaintiffs' property which has caused Plaintiffs to lose earned commissions, benefits, business opportunities, and other losses and consequential damages in an amount not less than $1,000,000.

30. In the exercise of its equitable powers this Court may determine and award compensatory and general damages to Plaintiffs as a result of Melaleuca's conversion of their property as set forth above.

## IV. FOURTH CLAIM FOR RELIEF (Rescission)

31. All prior allegations are incorporated herein by reference as if the same were more fully set forth and as an alternative ground for relief alleges the following:

32. In January of 1999 and subsequently, Melaleuca changed its compensation program such that it became a pyramid scheme and otherwise illegal.

33. At that time and subsequently, Plaintiffs were told that they had to perform new and

additional services for the Defendants in order to receive the 7 percent organizational commission originally agreed upon the parties.

34. Plaintiffs were unaware that these additional services created an illegal pyramid scheme and constituted a violation of the law.

35. The new compensation plan adopted by Melaleuca should be declared *void ab initio* as an unlawful transaction.

## V. FIFTH CLAIM FOR RELIEF
## (Estoppel)

36. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

37. Plaintiffs relied on the promises and representations set forth herein, and in particular, Defendants' promise that Plaintiffs would be entitled to receive their 7 percent organizational commission so long as they complied with the then existing requirements for that commission, and that the requirements for the 7 percent organizational bonus would not be changed.

38. Plaintiffs reasonably relied on Defendants' promises and has suffered substantial economic loss as a result of that reliance as set forth herein.

39. The loss to Plaintiffs was or should have been foreseeable by Defendants.

## VI. SIXTH CLAIM FOR RELIEF
## (Breach of Agreement)

40. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

41. The unilateral withholding of the remaining 50 percent of the Pollards and CP Enterprises' earned residual commissions, termination of the Pollards and CP Enterprises' distributor

agreement, and the discontinuance of the Pollards and CP Enterprises' right to any further commissions based on an alleged violation of the parties' agreement is wrongful and constitutes a breach of the agreement by Defendants.

42. Substantial sales of Defendants' products have continued to be marketed or sold through the Pollards and CP Enterprises' marketing organization.

43. The breach of the agreement by the Defendants in this regard has resulted in significant damages to the Pollards and CP Enterprises involving a loss of the remaining 50 percent of CP Enterprises' earned residual incomes, benefits, lost business opportunity, and other losses and consequential damages exceeding $1,000,000.

## VII. ATTORNEYS' FEES

44. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

45. Plaintiffs have been required to retain the legal services of the law firm Huntley Park, LLP to prosecute this action and have incurred attorneys' fees and costs because of the wrongful conduct of Defendants as herein alleged.

46. Plaintiffs' are entitled to recover their reasonable attorneys' fees and costs pursuant to Idaho Code §§ 12-120, 12-121, Federal Rule of Civil Procedure 54, and other applicable law.

Wherefore, Plaintiffs pray the Court for judgment against Defendants as follows:

1. For judgment against Defendants, and each of them, an in favor of the Plaintiffs granting them damages for lost income, benefits, lost business opportunity and other losses and consequential damages in an amount to be determined at trial.

2. For judgment against the Defendants and each of them, and in favor of the plaintiffs

granting general damages in an amount to be proven at trial;

3. For judgment against the Defendants and each of them, awarding Plaintiffs' prejudgment interest as provided by law;

4. In the alternative, for judgment against Defendants declaring the compensation plan adopted by Melaleuca in January of 1999, with the changes since then, to be *void ab initio*, thereby placing the parties in a position they would have been prior to Melaleuca's adoption of this new compensation plan.

5. For judgment against the Defendants and each of them, and in favor of the Plaintiffs awarding them reasonable attorneys' fees and costs of suit, pursuant to Idaho Code §§ 12-120, 12-121, Federal Rule of Civil Procedure 54, and other applicable law.

6. For such other and further relief as appears just and equitable in the premises.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED this 13 day of January, 2004.

HUNTLEY PARK, LLP

Steven L. Olsen
Attorney for Plaintiffs