Steven L. Olsen ISBN 3586
HUNTLEY PARK, LLP
250 S. 5th, Suite 660
P.O. Box 2188
Boise, Idaho 83701-2188
Telephone:   208-345-7800
Facsimile:    208-345-7894

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CP ENTERPRISES INTERNATIONAL, INC.,<br><br>              Plaintiff,<br><br>vs.<br><br>MELALEUCA, INC.,<br><br>              Defendant. | Case No. CV 04-19-E-LMB<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, the Plaintiff, by and through its counsel of record, Huntley Park, LLP, and complains against the Defendant as follows:

### I. PARTIES, JURISDICTION AND VENUE

1.   CP Enterprises International, Inc. ("CP Enterprises"), is, and at all times relevant hereto, was a Colorado corporation in good standing.

2.   At all times relevant herein the Defendant was an Idaho corporation, with its principal place of business in Idaho Falls, Bonneville County, Idaho.

3.   The amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and attorneys' fees. This Court has diversity jurisdiction pursuant to Title 28,

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – 1

Section 1332, U.S.C.

4. This action arose in Bonneville County and venue is proper in the Eastern Division of the United States District Court for the District of Idaho pursuant to D.Id.L.Div.R.3.1.

## II. FACTUAL ALLEGATIONS

5. Plaintiff was solicited by agents of Defendant not only to purchase Melaleuca products, but also to become an Independent Marketing Executive, a designation used by the Defendant for agents selling its product.

6. Based on numerous written and oral representations made by Defendant's agents, upon which Plaintiff justifiably relied, Plaintiff entered into a distributor agreement with the Defendant which was supplied to Plaintiff by the Defendant and which was designated as the Melaleuca Marketing Executive Agreement.

7. Pursuant to the Agreement, as well as related documents and verbal representations made by the Defendant and its agents, Plaintiff was to be paid commissions and bonuses based on the sale of Melaleuca products by individuals or entities within a Melaleuca marketing organization to be developed by the Plaintiff.

8. The central or primary form of compensation to be paid to the Plaintiff was what the Defendant denominated as the 7 percent organizational commission, which involved the payment of a 7 percent commission based on the proceeds from revenue derived from monthly sales of Melaleuca products generated by the Plaintiff's marketing organization.

9. In the written documentation supplied to and verbal statements made to the Plaintiff by Defendant and its agents, the Defendant, among other things, represented to Plaintiff

the following:

a. The organizational commission was a way of building residual income and could mean added security for retirement.

b. This was an opportunity for workers to create their own retirement fund – security they know will be there when they need it.

c. This was a unique program which offers income security based on continuing monthly sales generated after a one-time product presentation.

d. This was an opportunity to retire more comfortably.

e. This arrangement rewards loyal employees with wholesale prices and lasting residual commissions.

f. The organizational commission involved a secure income for today and tomorrow for those who don't have a retirement plan or are concerned about their current retirement program.

g. With the Melaleuca business you have the potential to build a business with residual income that lasts a lifetime.

h. A Melaleuca independent business has the potential to provide residual income that can mean added security for retirement, a residual income is a hedge against economic down turns before and after you retire.

i. Melaleuca is loyal to the 7 percent organizational bonus, the bonus is consistent and secure, the method for determining the 7 percent organizational bonus will not be changed and continues to be the foundation of our compensation plan.

j. A Melaleuca business can be passed on from a marketing executive to his

children at the time of his death.

10. After the execution of the written Agreement between the Plaintiff and the Defendant, Plaintiff through exhaustive work and effort developed a large marketing organization which yielded millions of dollars to Defendant. Plaintiff thereby earned the right to and was paid substantial, continuing monthly commissions and bonuses by the Defendant, central of which was the 7 percent organizational bonus. Defendant made the representations set forth in paragraph 9 throughout Plaintiff's business relationship with Defendant.

11. Despite Defendant's assurances that the 7 percent organizational bonus was inviolate and would never be changed, the Defendant in January of 1999, unilaterally and without agreement of the Plaintiff or the payment of any additional consideration, withheld from the Plaintiff 50 percent of its ongoing commissions.

12. At that time, Defendant informed Plaintiff that in order to receive all or any portion of the withheld commissions, Plaintiff would have to perform new, additional services for the Defendant, which was never expressly or implicitly agreed to by Plaintiff.

13. Subsequent to January 1999, and without any consideration or agreement of Plaintiff, Defendant withheld additional commissions and informed Plaintiff that it would have to perform new and additional services for the Defendant in order to obtain the 7 percent organizational bonus.

14. In March of 1999, the Defendant further informed Plaintiff that the Defendant was going to withhold all of its earned organizational commissions, terminate its distributor agreement and discontinue said Plaintiff's right to any further commissions based on information received by the Defendant that Plaintiff allegedly violated certain policies of the Defendant.

## III.  FIRST CLAIM FOR RELIEF
### (Breach of Agreement - Lack of Consideration)

15. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

16. Until Defendant commenced to withhold 50 percent of the earned organizational commissions of the Plaintiff, the Defendant had always represented that as long as Defendant's products were sold through Plaintiff's marketing organization, the 7% organizational commissions would always be paid to Plaintiff.

17. Substantial sales of Defendant's products have continued to be marketed or sold through Plaintiff's marketing organizations.

18. The unilateral withholding by the Defendant of 50 percent of Plaintiff's earned organizational commissions and thereafter requiring Plaintiff to perform new, additional services for the Defendant in order to earn previously earned commission and to be paid the 7 percent organizational commission is wrongful and constitutes a breach of agreement by the Defendant. Further, the new agreement Defendant attempted to implement lacked consideration and is therefore unenforceable.

19. The breach of agreement by the Defendant has resulted in damages exceeding $1,000,000 to the Plaintiff in the loss of its earned residual commissions, benefits and other losses and consequential damages. Plaintiff is further entitled to prejudgment interest on the losses caused by Melaleuca.

## IV. SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

20. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

21. Plaintiff's significant effort and labor over the course of time resulted in the development of a large marketing organization which generated the sale of millions of dollars of Defendant's product.

22. The Defendant's unilateral withholding of all earned commissions from the Plaintiff from the substantial sales of Defendant's products through Plaintiff's marketing organization and Defendant's failure to pay Plaintiff its 7 percent organizational bonus as agreed, not only constitutes a breach of agreement by the Defendant, but also involves the unjust enrichment of the Defendant at the expense of the Plaintiff.

23. Such unjust enrichment by the Defendant at the Plaintiff's expense has resulted in significant damages to the Plaintiff as set forth herein.

## V. THIRD CLAIM FOR RELIEF
### (Conversion)

24. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

25. After withholding Plaintiff's earned residual commissions and failing to pay Plaintiff the 7 percent organizational bonus as previously agreed, the Defendant converted the organization and business developed by Plaintiff, giving to itself or other individuals within the Melaleuca system the profits resulting from Plaintiff's individual effort and expense.

26.   The acts of Melaleuca described above constitute a conversion of Plaintiff's property which has caused Plaintiff to lose earned commissions, benefits, business opportunities, and other losses and consequential damages in an amount not less than $1,000,000.

27.   In the exercise of its equitable powers this Court may determine and award compensatory and general damages to Plaintiff as a result of Melaleuca's conversion of its property as set forth above.

## VI.  FOURTH CLAIM FOR RELIEF
### (Rescission)

28.   All prior allegations are incorporated herein by reference as if the same were more fully set forth and as an alternative ground for relief alleges the following:

29.   In January of 1999 and subsequently, Melaleuca changed its compensation program such that it became a pyramid scheme and otherwise illegal.

30.   At that time and subsequently, Plaintiff was told that it had to perform new and additional services for the Defendant in order to receive the 7 percent organizational commission originally agreed upon the parties.

31.   Plaintiff was unaware that these additional services created an illegal pyramid scheme and constituted a violation of the law.

32.   The new compensation plan adopted by Melaleuca should be declared *void ab initio* as an unlawful transaction and Plaintiff should be compensated pursuant to the terms of the previous compensation program with Defendant.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – 7

## VII. FIFTH CLAIM FOR RELIEF
### (Estoppel)

33. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

34. Plaintiff relied on the promises and representations set forth herein, and in particular, Defendant's promise that Plaintiff would be entitled to receive its 7 percent organizational commission so long as it complied with the then existing requirements for that commission, and that the requirements for the 7 percent organizational bonus would not be changed.

35. Plaintiff reasonably relied on Defendant's promises and has suffered substantial economic loss as a result of that reliance as set forth herein, and should be compensated for that loss.

36. The loss to Plaintiff was or should have been foreseeable by Defendant.

## VIII. SIXTH CLAIM FOR RELIEF
### (Breach of Agreement)

37. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

38. The unilateral withholding of the remaining 50 percent of Plaintiff's earned residual commissions, termination of Defendant's distributor agreement, and the discontinuance of the Plaintiff's right to any further commissions based on an alleged violation of the parties' agreement is wrongful and constitutes a breach of the agreement by Defendant.

39. Substantial sales of Defendant's products have continued to be marketed or sold through Plaintiff's marketing organization.

40. The breach of the agreement by the Defendant in this regard has resulted in significant damages to Plaintiff involving a loss of the remaining 50 percent of Plaintiff's earned residual incomes, benefits, lost business opportunity, and other losses and consequential damages exceeding $1,000,000, and Plaintiff should be compensated for that loss.

### IX. ATTORNEYS' FEES

41. All prior allegations are incorporated herein by reference as if the same were more fully set forth.

42. Plaintiff has been required to retain the legal services of the law firm Huntley Park, LLP to prosecute this action and have incurred attorneys' fees and costs because of the wrongful conduct of Defendant as herein alleged.

43. Plaintiff is entitled to recover its reasonable attorneys' fees and costs pursuant to Idaho Code §§ 12-120, 12-121, Federal Rule of Civil Procedure 54, and other applicable law.

### X. RELIEF

Wherefore, Plaintiff prays the Court for judgment against Defendant as follows:

1. For judgment against Defendant and in favor of the Plaintiff granting it damages for lost income, benefits, lost business opportunity and other losses and consequential damages in an amount to be determined at trial.

2. For judgment against the Defendant and in favor of the Plaintiff granting general damages in an amount to be proven at trial;

3. For judgment against the Defendant awarding Plaintiff prejudgment interest as provided by law;

4. In the alternative, for judgment against Defendant declaring the compensation plan adopted by Melaleuca in January of 1999, with the changes since then, to be *void ab initio*, thereby placing the parties in a position they would have been prior to Melaleuca's adoption of this new compensation plan;

5. For judgment against the Defendant and in favor of the Plaintiff awarding it reasonable attorneys' fees and costs of suit, pursuant to Idaho Code §§ 12-120, 12-121, Federal Rule of Civil Procedure 54, and other applicable law.

6. For such other and further relief as appears just and equitable in the premises.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues.

DATED this _10_ day of March, 2005.

HUNTLEY PARK, LLP

_____
Steven L. Olsen
Attorney for Plaintiff